# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MAINE SPRINGS, LLC, | ) |
|        Plaintiff, | ) |
| v. | ) Docket no. 2:14-cv-00321-GZS |
| NESTLÉ WATERS NORTH AMERICA, INC., | ) |
|        Defendant. | ) |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant Nestlé Waters North America Inc.'s Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) with Incorporated Memorandum of Law (ECF No. 13) ("Motion to Dismiss"). For the reasons explained below, the Court GRANTS the Motion to Dismiss Count One for lack of Article III standing, and Count Two is DISMISSED WITHOUT PREJUDICE.[1]

## I. BACKGROUND

### A. Maine Springs

Plaintiff, Maine Springs, LLC ("Maine Springs") was founded seven years ago for the purpose of establishing a bottled water operation in Poland Spring, Maine. (Compl. and Demand for Jury Trial (ECF No. 1) ("Compl.") ¶ 8 at Page ID# 4.) Maine Springs owns the natural springs, bottling facility, bulk water facility and necessary equipment for bottled water operations. (Id. ¶

---

[1] In a footnote in Plaintiff Maine Springs, LLC's Memorandum in Opposition to Defendant's Motion to Dismiss (ECF No. 18) ("Pl.s' Opp'n"), Plaintiff Maine Springs, LLC requests the opportunity to file an amended complaint to address any pleading deficiency identified by the Court. (Pl.'s Opp'n at 1 n.1.) Plaintiff did not file a separate motion to amend or elaborate on their request beyond a single footnote. Accordingly, to the extent that Plaintiff requests to amend it's Complaint, that request is DENIED.

9.) The bottling facility is located in Poland Spring, Maine, and the bulk water facility is located approximately 2 miles away in Poland, Maine. (Id.) Each has its own spring water source. (Id.) In 2007, Maine Springs acquired permits that make it the holder of the single largest natural spring water withdrawal permit issued by the State of Maine.[2] (Id. ¶ 10.) Maine Springs formed its business with the intention to serve customers in Maine, New York, Massachusetts, Connecticut and New Jersey. (Id.)

      **B.**     **Nestlé Waters and Poland Spring® Brand Water**

Defendant, Nestlé Waters North America Inc. ("Nestlé Waters"), a business unit of Nestlé, S.A., is engaged in the business of locating and managing sources of water, extracting and obtaining water for bottled water products, bottling water, developing packing and marketing of bottled water, selling and distributing bottled water products to consumers, and delivering bottled water products to consumers nationally, including in the State of Maine. (Compl. ¶ 3.) Nestlé Waters is the largest bottled drinking water company in the United States. (Id. ¶ 6.) Nestlé Waters maintains a 31.6% share of all bottled water sales in the United States, which leads the next bottled water manufacturer, Niagara, by almost double. (Id. ¶ 7.) Nestlé Waters markets 15 brands of water, including its Poland Spring® Brand, which is America's leading brand of bottled water. (Id. ¶¶ 8 at PageID# 3, 19.)

Nestlé Waters represents to its consumers that it's Poland Spring® Brand bottled water is 100 percent natural spring water. (Id. ¶ 19.) Its label contains the description: "100% Natural Spring Water." (Id.) The Nestlé Waters' Poland Spring® Brand water website states:

> Born Better. ® Poland Spring® Brand 100% Natural Spring Water is sourced only
> from carefully selected springs, and contains naturally occurring minerals for a
> crisp, clean taste.

---

[2] The bottling facility is permitted for 500 gallons per minute of water extraction; the bulk water facility is permitted for 1000 gallons per minute of water extraction.

> http://www.polandspring.com/
>
> There are over three hundred fifty-eight million trillion gallons of water on Earth. But not all water is created equal. Poland Spring® Brand 100% Natural Spring Water comes only from carefully selected mountain springs that are continually replenished. What starts out as rain and snow, soaks into the ground and is filtered naturally by the earth with a distinct composition of minerals to create our crisp, refreshing taste.
>
> http://www.polandspring.com/#/assured/our_quality
>
> Every drop of Poland Spring® Brand 100% Natural Spring Water comes from carefully selected spring sources and is captured at the source.
>
> http://www.polandspring.com/#/assured/our_quality

(Compl. ¶ 20.) Video content and script on the website additionally demonstrates to the viewer that the water that is bottled as Poland Spring® Brand 100% Natural Spring Water is uniquely naturally filtered water from deep beneath the earth. (Id. ¶ 21.)

Over the last several years, bottled water manufacturers and distributors have attempted to differentiate their products from regular bottled tap water by sourcing the water from sources other than local municipal water supplies, such as a spring or an aquifer. (Id. ¶ 26.) Consumers pay more for bottled water sourced from a spring than from a municipal tap, or other source. (Id. ¶ 28.) As a result, bottled water manufacturers, like Nestlé Waters, have prominently advertised their bottled water as being sourced from a natural spring. (Id. ¶ 29.)

Although Nestlé Waters has a bottling plant in Poland Spring, Maine, the original Poland Spring (a bedrock spring located near the top of Ricker Hill in the Town of Poland Spring, Maine) is not used as a resource for Poland Spring® Brand water, because that spring has been dry for decades. (Id. ¶ 18.) The Poland Spring® Brand water that Nestlé Waters began marketing in 1994 has never been extracted from the Poland Spring and does not come from the same aquifer as the original source. (Compl. ¶ 31.) Accordingly, Maine Springs alleges that since the original Poland

Spring has not been in use for over 30 years, Nestlé Waters' representation that the Poland Spring is one of its sources of the water is literally false. (Id. ¶ 23.)

Additionally, Maine Springs alleges that the ground or well water sold as Poland Spring® Brand does not necessarily come from carefully selected mountain springs that are continually replenished, as advertised. (Id. ¶ 32.) Further, Maine Springs alleges that it is sold as 100% natural spring water when it is not. (Id.) Instead, the water comes from a variety of sources including springs, ground water and well water in the Maine geographic area. (Id. ¶ 22.) Thus, Maine Springs alleges, the Poland Spring® Brand name and advertising is misleading. (Id.) Through the Complaint, Maine Springs alleges that the conduct of Nestlé Waters in marketing and advertising its Poland Spring® Brand water in the foregoing manner violated and continues to violate the provisions of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (Compl. ¶ 35.)

### C. Maine Springs Attempts to Enter Into Bulk Water Contracts

Maine Springs made attempts to supply bottling companies with its bulk water. (Compl. ¶ 12.) For example, in October 2011, Maine Springs proposed to supply spring water to Niagara Bottling Company, and, in April 2012, Maine Springs made a similar proposal to Crystal Rock. (Id.) Both Niagara Bottling and Crystal Rock rejected Maine Springs' supply proposals. (Compl. ¶ 17.) The Complaint alleges that: "[o]ther bottling companies and at least one distributor have similarly rejected Maine Springs' proposals for fear of threatened litigation by Nestlé Waters." (Id.) As a result, Maine Springs has been prevented from selling any of its water and the bottling and distribution facilities have sat idle. (Id.)

### D. Nestlé Waters Threatens Litigation

On March 4, 2010, Nestlé Waters threatened litigation against Maine Springs, based upon Maine Springs' attempt to bottle and market a product which Nestlé Waters believed infringed on

4

its Poland Spring ® Brand water. (Compl. ¶ 11.) Maine Springs alleges that the gist of Nestlé Waters' position was that Maine Springs could not identify the source of its water, Poland Spring, Maine, without creating confusion with Nestlé Water's Poland Spring® Brand product. (Id.)

In September of 2011, Nestlé Waters objected to Maine Springs' bottling, distribution and marketing of its water. (Compl. ¶ 13.) Nestlé Waters contended that:

> As you know the Poland Spring® brand of spring water originated from the famous "Poland Spring", located in Poland Spring, Maine. Water from the "Poland Spring" has been marketed for decades under the Poland Spring® trademark, a mark that has become famous and universally associated in the minds of the consuming public with bottled water marketed and sold by Nestlé and its predecessors. Given these facts, the statement on Maine Springs' label, "Source Poland Spring Maine", will create in the minds [of] consumers the impression that source of the product is the "Poland Spring" owned by Nestlé. While we appreciate that there is a geographic location known as Poland Spring, Maine, the predominant associations created by the statement are that the "Poland Spring" is the source of the water and that its contents are associated with the Poland Spring® brand.
>
> In light of these facts, the referenced statement constitutes, among other things, a false designation of origin and false and misleading representation of fact under Section 43 of the Lanham Act, and will likely cause confusion or misunderstanding as to the affiliation, connection or sponsorship of Nestlé under Section 43 and the Maine Uniform Deceptive Trade Practices Act.

(Compl. ¶ 13.)

Nestlé Waters demanded that Maine Springs not use any label that identified Poland Spring, Maine as the source of its water. (Compl. ¶ 14.) Maine Springs alleges that as a matter of federal and state law, bottled water must identify its source on the label, and that Maine Springs would be required to identify its source by city, state and ZIP code on the bottle as required by Maine R. 10-144, Ch. 235, § 8. (Id.) Maine Springs' source is located in Poland Spring, Maine, and thus, the bottled water necessarily would have to so indicate. (Id.) In response, Maine Springs changed its label from "Source: Poland Spring, Maine" to "Source: Located in Poland Spring, Maine." (Id. ¶ 15.)

5

In October of 2011, Nestlé Waters advised that it did not approve of the change; nor would it do so and that Maine Springs' suggestion to Niagara Bottling that Nestlé Waters did approve of this label was false. (Id. ¶ 16.) Nestlé Waters stated that it would continue to monitor Maine Springs' advertising and marketing of its products and take appropriate action to protect its brand. (Id.)

### E. Litigation

On August 11, 2014, Maine Springs filed its Complaint and Demand for Jury Trial (ECF No. 1) naming Nestlé Waters as Defendant. The Complaint asserts two counts: (1) Count One asserts that Defendant Nestlé Waters in marketing and advertising its Poland Spring® Brand water has violated and continues to violate the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and (2) Count Two asserts that Defendant Nestlé Waters tortuously interfered with Maine Springs' prospective relationships through intimidation.

On September 11, 2014 Defendant Nestlé Waters moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the Motion to Dismiss, Nestlé Waters argues that the Complaint should be dismissed under Rule 12(b)(6) because Maine Springs lacks Lanham Act standing as articulated in <u>Lexmark Int'l Inc. v. Static Control Components</u>, 134 S.Ct. 1377 (2014), and the tortious interference claims is based on conduct that is not actionable under Maine law. (Motion to Dismiss at 1.)

## II. DISCUSSION

### A. Count One: Lanham Act Violations

In Count One, the Complaint asserts that through its marketing and advertising of Poland Spring® Brand water, Nestlé Waters has violated the Lanham Act. Through the Motion to Dismiss, Nestlé Waters argues that this Count must be dismissed because Maine Waters does not

come within the zone of interests protected by the Lanham Act and has failed to sufficiently allege proximate cause as stated by the Supreme Court in Lexmark Int'l Inc., 134 S.Ct. 1377.

In Lexmark Int'l Inc., the Supreme Court addressed a split of Circuit Court of Appeals' opinions regarding who may sue and the proximate cause requirement under the Lanham Act. The Court held that in order to come within the "zone of interests" of the Lanham Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales." Id. at 1390. In order to satisfy the proximate cause requirement of the Lanham Act, a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[.]" Id. at 1391. The Court noted that the issue of whether a party may sue under the Lanham Act is distinct from whether that party has Article III standing to press its claims. Id. at 1386.

In this case, Nestlé Waters argues that Maine Springs has failed to sufficiently allege that it has been damaged by Nestlé Waters' actions and is therefore outside the zone of interests and also has not sufficiently pled a causal nexus between the actions of Nestlé Waters and Maine Springs' damages. (Motion to Dismiss at 9-13.) While the parties addressed whether Maine Springs comes within the zone of interests of the Lanham Act and whether it has sufficiently alleged proximate cause, neither party directly addressed whether Maine Springs has constitutional standing to bring the claims within the Complaint.[3]

Standing is a threshold issue in every federal case. See Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006) (stating that "[a] federal court must satisfy itself as to its jurisdiction, including a plaintiff's Article III standing to sue, before addressing his particular claims, regardless of whether the litigants have raised the issue of standing."). Even where the issue of Article III

---

[3] While the parties did not directly address the issue of Article III standing, the briefing before the Court directly addressed whether and what types of harm allegedly befell Maine Springs and the issue of causation between those injuries and the actions of Defendant, which the Court found informative on the issue of Article III standing.

7

standing is not raised by the parties, "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." United States v. Hays, 515 U.S. 737, 742 (1995) (internal punctuation and citation omitted) (stating that standing is not subject to waiver). "If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." New Hampshire Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 12 (1st Cir. 1996) (internal punctuation and citation omitted). Therefore, the Court must address whether Maine Springs has Article III standing before it can address the underlying merits of the claim.

To satisfy Article III's standing requirements, "Plaintiffs must show (1) that they have suffered an injury in fact, (2) that the injury is fairly traceable to the defendant's allegedly unlawful actions, and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Animal Welfare Inst. v. Martin, 623 F.3d 19, 25 (1st Cir. 2010) (internal quotations omitted).

> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal citations omitted). Because this case is in the pleading stage of litigation, the Court examines whether Maine Springs has standing by "accept[ing] as true all well-pleaded factual averments in the plaintiff's complaint and indulg[ing] all reasonable inferences therefrom in [its] favor." Katz v. Pershing, LLC, 672 F.3d 64, 70-71 (1st Cir. 2012) (internal punctuation and citations omitted); see also Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's

8

conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."(internal punctuation and citation omitted)).

To satisfy the injury in fact requirement, Maine Springs must show that Nestlé Waters has invaded "a legally protected interest that is 'concrete and particularized.'" Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000) (quoting Lujan, 504 U.S. at 560). Here, the Complaint makes a general statement that "[a]s a direct and proximate result of Nestlé Water[s'] misrepresentations about Poland Spring® Brand water, competitors, such as Plaintiff Maine Springs, have and continue to suffer damage." (Compl. ¶ 42.) This bald and conclusory assertion alone is insufficient to state an injury.

Searching the Complaint and indulging all possible inferences in Maine Springs' favor, the Court discerns two possible injuries in Count One outside of the conclusory statement. First, the Court infers that Maine Springs is attempting to assert an injury related to it's capacity and ability to produce and market bottled water. (See Compl. ¶¶ 9, 18, 19, 26, 28-30, 36; Pl. Maine Springs, LLC's Mem. in Opp'n to Def.'s Mot. to Dismiss (ECF No. 18) at 10-11.) Specifically, Maine Springs argues that consumers of bottled water choose Poland Spring® Brand water due to Poland Spring's false statement that its water is natural spring water from the Poland Spring. If, however, Poland Spring were truthful in its advertising, consumers would instead purchase water bottled or produced by Maine Springs. (See id.) Assuming the truth of those assertions and inferences, the Court nonetheless finds the asserted injury to be insufficient to confer Article III standing. See Katz, 672 F.3d at 70-71. There is nothing in the Complaint to indicate that Maine Springs has entered or attempted to enter the bottled water market in any way. Instead, the Complaint states that Maine Springs has the capacity and permits but that the bottling and distribution facilities have sat idle. (Compl. ¶¶ 8, 9, 17.) The Complaint does not allege that Maine Springs has ever marketed

any bottled water or that it is prepared to sell bottled water at this time. Nestlé Waters' allegedly false advertising or false designation of origin cannot have harmed Maine Springs by channeling customers toward Poland Spring® Brand water when Maine Springs has not even begun to offer bottled water. In the language of the Second Circuit where a patent-holder marketed a weight loss product to potential investors and sought to someday market that product to the public, the patent-holder "hopes of eventually . . . selling a retail weight loss product are too remote at this stage to confer standing to challenge [a competitor's] advertising." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1112 (2nd Cir. 1997) (discussing Lanham Act standing); see also Joint Stock Society v. UDV North America, Inc., 266 F.3d 164, 176 (3rd Cir. 2001) (finding that descendants of P.A. Smirnov, who built a national and international brand of vodka in imperial Russia, lacked Article III standing to pursue their claims for false advertising against a group who also claimed rights to the Smirnov name and sold Smirnov brand vodka in the United States because the descendants had not yet begun to market their vodka in the United States nor were they prepared to do so); Hutchinson v. Pfeil, 211 F.3d 515, 520 (10th Cir. 2000) (finding that the descendent of an artist lacked Article III standing where the descendent claimed false advertising and false designation of origin against owners of an allegedly unfinished work where the descendent claimed an ownership interest in the final version of that same work but did not know if the final version existed and stating "the compounded uncertainties inherent in any concrete realization of that interest rendered the potential for harmful competition from defendants' rival painting too speculative."). Likewise in this case, Maine Springs' plans of eventually marketing and selling bottled water are too speculative to constitute an injury-in-fact for its Lanham Act claim.

Turning to the second injury in the Complaint, the Complaint explicitly alleges that Maine Springs has attempted to enter into contracts to sell its bulk water. (Compl. ¶¶12, 17.) However,

other companies, including Niagara Bottling and Crystal Rock, have rejected those supply proposals, and "[a]s a result, Maine Springs has been prevented from selling any of its water[,] and the bottling and distribution facilities have sat idle." (Id. ¶ 17.) This injury – a rejection of supply proposals – is concrete and particularized, and is a sufficient injury at this pleading stage of litigation. While Maine Spring's bulk water injury is a sufficient "injury in fact," the Court finds that it fails the second requirement, causation.

The second prong of the standing inquiry considers whether "the injury is fairly traceable to the defendant's allegedly unlawful actions[.]" Martin, 623 F.3d at 25 (internal punctuation omitted). The purpose of the second prong is to ensure that there is a "genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct" and that plaintiff's injury is not caused by a third party, not presently before the Court. Gaston Copper Recycling Corp., 204 F.3d at 161; see also Lujan, 504 U.S. at 560.

The allegedly illegal conduct by Defendant Nestlé Waters, as asserted by Maine Springs in its Lanham Act claim, is the false advertising and false representations concerning the origin of Poland Spring® Brand water. Specifically, Maine Springs claims that Nestlé Waters' commercial advertisements regarding the source and nature of Poland Spring® Brand bottled water contain false and/or misleading statements. (Compl. ¶ 36.) However, there is nothing to connect the only concrete and particularized injury, a rejection of supply proposals, to the allegedly false and misleading advertising of Poland Spring® Brand water. Rather, the Complaint explicitly states that the reason distributors have rejected Maine Springs' proposals for its bulk water are "for fear of threatened litigation."[4] (Compl. ¶ 17.) There is not a genuine nexus between the allegedly false

---

[4] This is not a claim arising from Defendant Nestlé Waters threatening litigation against Maine Springs, which can instead be found in Plaintiff's second claim for tortious interference with business relationships. (Compl. ¶¶ 43-47.) Moreover, the threatened litigation concerned Plaintiff Maine Springs' proposed advertising for its own water.

11

and deceptive advertising and misrepresentations regarding Poland Spring® Brand water and Maine Springs' rejected contracts.[5]  See Ford v. NYLCare Health Plans of Gulf Coast, Inc., 301 F.3d 329, 333-34 (5th Cir. 2002) (finding that a physician lacked Article III standing to bring his claim of false advertising against an HMO that advertised that its management techniques improve health care quality and that they allow patients and doctors to make their own treatment decisions because there was nothing to show that the physician's income declined because of those false advertisements).  Maine Springs, as the party asserting federal jurisdiction, has failed to connect the asserted injury to the Lanham Act violations of Plaintiff.  Therefore, the Court finds that Maine Springs' contract-based injury is not fairly traceable to Nestlé Springs' alleged violations of the Lanham Act.  Because the Court finds Article III standing for the Lanham Act violation to be lacking, Count One of the Complaint must be DISMISSED.

### B.     Count Two: Tortious Interference

Plaintiff Maine Springs also asserts a state-law claim for tortious interference.  In light of the dismissal of Maine Springs' Lanham Act claim, which provided the source of original federal jurisdiction,[6] the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.  See 28 U.S.C § 1367(c)(3).  "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."  Rodriguez v. Doral

---

Further, this is not a request for a declaratory judgment by Maine Springs that it may place "Poland Spring" on its labels.

[5] Accordingly, the Court notes that even if there was a nexus between the injury and the actions of Defendant Nestlé Waters, Maine Springs has failed to sufficiently allege proximate cause under the Lanham Act in the form of "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising." Lexmark, Intern. Inc., 134 S.Ct. at 1391.

[6]  The Complaint states that the "Court has jurisdiction pursuant to 28 U.S.C. §§ [1332], 1338(b) and 1367 for Plaintiff's common law claim for tortious interference with prospective business relations." (Compl. ¶ 4.) However, the Complaint is devoid of allegations to support the requisite amount in controversy for diversity jurisdiction.

Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). Accordingly, in an exercise of its informed discretion, the Court declines to exercise supplemental jurisdiction and DISMISSES WITHOUT PREJUDICE Maine Springs' state-law claim pursuant to 28 U.S.C. § 1367(c)(3); see Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir.1996).

## III. CONCLUSION

For the reasons just stated, the Court GRANTS the Motion to Dismiss Count One, and Count Two is DISMISSED WITHOUT PREJUDICE.

        SO ORDERED.

        /s/ George Z. Singal
        United States District Judge

Dated this 18th day of March, 2015.